UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Mary Lou McMan,

    Plaintiff,

v.                                                                  Case No. 19-12670

C.S. Bard Inc., *et al.*,                                  Sean F. Cox
                                                                 United States District Court Judge

    Defendants.
_____/

## OPINION AND ORDER
## GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This is a product liability case. Plaintiff, Mary Lou McMan ("McMan") initiated this action against Defendants, C.R. Bard Inc. and Bard Peripheral Vascular, Inc. (collectively "Bard") alleging strict products liability, negligence, breach of express and implied warranty, fraudulent misrepresentation, fraudulent concealment, violations of state law prohibiting consumer fraud and unfair and deceptive trade practices, and punitive damages claims. (ECF No. 1).

The matter currently before the Court is Bard's motion for summary judgment. The Court GRANTS Bard's motion for summary judgment because McMan's claims are time barred by Michigan's three-year statute of limitations.

### BACKGROUND

This case began as part of a multidistrict litigation proceeding against Bard in the United States District Court for the District of Arizona. It was transferred on August 20, 2019 along with other cases that the Arizona court determined no longer benefited from centralized proceedings. (ECF No. 2 at PageID 8).

On December 28, 2016, McMan initiated this action in the District of Arizona alleging through a short form complaint: (1) Strict Products Liability – Manufacturing Defect; (2) Strict Products Liability – Information Defect (Failure to Warn); (3) Strict Products Liability – Design Defect; (4) Negligence – Design; (5) Negligence – Manufacture; (6) Negligence – Failure to Warn; (7) Negligent Misrepresentation; (8) Negligence Per Se; (9) Breach of Express Warranty; (10) Breach of Implied Warranty; (11) Fraudulent Misrepresentation; (12) Fraudulent Concealment; (13) "Violations of Applicable _____ (insert state) Law Prohibiting Consumer Fraud and Unfair and Deceptive Trade Practices"; and (14) Punitive Damages. (ECF No. 1 at PageID 3-4).

On February 5, 2021, Bard filed this motion for summary judgment arguing: (1) Michigan law presumes that Bard is not liable and McMan cannot overcome the presumption;[1] (2) all of McMan's claims are barred by Michigan's three-year statute of limitations; (4) Michigan law bars claims against Bard because McMan's alleged injuries were caused by a known inherent risk of the Eclipse Filter that doctors knew about and that could not be eliminated with an alternative design; (5) although the short form complaint pleads twelve product liability causes of action, Michigan only recognizes five, and summary judgement is warranted on four of those five claims for additional independent reasons; (6) McMan's Unfair and Deceptive Trade Practices claim fails under Michigan Law; (7) McMan may not recover punitive damages. (ECF No. 20 at PageID 4457).

In her response to Bard's motion for summary judgment, McMan withdrew "her claims for strict liability manufacturing defect, design defect, and failure to warn (Counts I, II, and III), negligent manufacturing (Count V), negligent failure to recall (Count VI), negligence per se (Count IX), breach of express warranty (Count X), and punitive damages." (ECF No. 27 at PageID

---

[1] Bard withdrew this argument in their reply brief. (Def's Reply at 1).

5071). Thus, the only claims remaining are: (1) negligence – design; (2) negligence – failure to warn; (3) negligent misrepresentation; (4) breach of implied warranty; (5) fraudulent misrepresentation; (6) fraudulent concealment; and (7) "Violations of Applicable _____ (insert state) Law Prohibiting Consumer Fraud and Unfair and Deceptive Trade Practices." (ECF No. 1 at PageID 3-4).

With respect to summary judgment motions, this Court's practice guidelines, included in the Scheduling Order and provide, consistent with FED. R. CIV. P. 56 (c) and (e), that:

> a. The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute. The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .
>
> b. In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts. The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record. The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.
>
> c. All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(Scheduling Order at 3).

The parties complied with the Court's practice guidelines for summary judgment motions such that Defendant filed a "Statement of Undisputed Material Facts" ("Def's "Stmt.") (ECF No. 21) and Plaintiff filed "Responses to Defendants['] Statement of Undisputed Material Facts and Separate Statement of Disputed Facts" ("Pl.' s Stmt.") (ECF No. 28).

On August 8, 2010, after signing informed consent, McMan was treated with a Bard Eclipse IVC Filter because of lower extremity deep vein thrombosis and an upcoming gastric bypass surgery. (ECF No. 21-2 at PageID 4572).

On October 25, 2012, McMan was seen by her primary care physician for lower back pain, continued knee pain, and a bunion on her right foot. (Def's Stmt. at PageID 4549). The lumbar spine x-ray taken on the same day shows the Eclipse filter with a missing leg and that the embolized filter leg was on the left side of McMan's pelvis. (Def's Stmt. at PageID 4549). However, at the time, the radiologist who performed the x-ray did not note a foreign body, nor did he inform McMan or any of her other doctors of its presence. (Pl's Stmt. at PageID 5115-5116).

On December 19, 2014, McMan's primary care physician referred McMan for another x-ray of her lumbar spine. (Def's Stmt. at PageID 4550). The x-ray study reported, "a needle shaped foreign object" in the soft tissue of McMan's pelvis that "is unchanged from the previous lumbar spine exam dated 10/25/12." (Def's Stmt. at PageID 4550). This is the first instance of any physician noting the presence of the Eclipse filter leg on the prior x-ray from October 25, 2012. (Pl's Stmt. at PageID 5116).

A January 30, 2015 x-ray of McMan's pelvis reported, "[n]o significant interval change in a previously described needle like foreign body . . . . ." (Def's Stmt. at PageID 4550).

On February 20, 2015, a pelvic CT scan was taken to "rule out foreign object," and reported: "Findings: The fine linear metallic radiodensity seen in the left side of the pelvis on radiographs from 01/30/15 and lumbar spine radiographs on 10/25/12 . . . There is no surrounding inflammatory reaction or fluid collection." (Def's Stmt. at PageID 4451).

On April 22, 2015, McMan saw a vascular surgeon who reviewed McMan's imaging and observed that the "fine linear metallic densities noted and has been present for at least the last three years . . . may represent a piece of the filter that has been dislodged or migrated. However, the patient is completely asymptomatic in this regard and the object has been stable in location over several years . . . ." (Def's Stmt. at PageID 4551). This discovery of the foreign body and the

subsequent identification of the body as a fractured filter strut caused McMan to reach out to a lawyer about her filter. (Pl's Stmt. at PageID 5117).

On December 28, 2016, McMan filed her complaint against Bard in a multidistrict litigation proceeding in the District of Arizona. (ECF No. 1-1 at PageID 7).

## STANDARD OF REVIEW

Summary judgment will be granted where there exists no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court "must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the non-moving party." *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002).

## ANALYSIS

Because this Court sits in diversity, the substantive law of Michigan governs the claims of in this case. *Armisted v. State Farm Mut. Auto. Ins. Co.*, 675 F.3d 989, 995 (6th Cir. 2012).

Bard correctly argues that McMan's claims are barred by Michigan's three-year statute of limitations pursuant to M.C.L. § 600.5805(12).

Michigan's product liability law brings under its umbrella any "action based on a legal or equitable theory of liability brought for . . . injury to a person or damage to property caused by or resulting from the production of a product." M.C.L. § 600.2945(h). "Production means manufacture, construction, design, formulation, development of standards, preparation,

5

processing, assembly, inspection, testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging, or labeling." M.C.L. § 600.2945(i). *See Good v. Howmedica Osteonics Corp.*, Case Nos. 15-cv-10133, 15-cv-10134, 2015 WL 8175256 (E.D. Mich. Dec. 8, 2015)(applying Michigan's three-year statute of limitations to design defect, manufacturing defect, failure to warn, negligence, gross negligence, negligent misrepresentation, breach of express warranty, breach of implied warranty, and catch-all Michigan statutory and common law remedy claims). Thus, under the plain language of the statute, all of McMan's claims fall under Michigan's product liability law because they all stem from McMan's injury caused by the production of the Eclipse filter.

Under Michigan law, "the period of limitations runs from the time the claim accrues. The claim accrues at the time . . . the wrong which the claim is based was done regardless of the time when damage results." M.C.L. § 600.5827. "[T]he wrong is done when the plaintiff is harmed rather than when the defendant acted." *Trentadue v. Buckler Lawn Sprinkler*, 479 Mich. 378, 388 (2007).

Importantly, "a claim accrues *even if the plaintiff is not subjectively aware of an injury or its cause*." *Tice v. Zimmer Holdings, Inc.*, No. 1:15-cv-134, 2015 WL 4392985 at *3 (W.D. Mich. July 15, 2015) (interpreting Michigan law; citing *Trentadue*, 479 Mich. at 389.) (emphasis added). The Michigan Supreme Court has expressly held that M.C.L. § 600.827 does not recognize the "discovery rule" from common law, under which "a claim does not accrue until a plaintiff knows, or objectively should know, that he has a cause of action and can allege it in a proper complaint." *Trentadue*, 479 Mich. at 389. Instead, the claim starts to accrue at the time "the wrong which the claim is based was done regardless of the time when damage results." M.C.L. § 600.5827.

6

Here, both parties agree that "a strut of the Eclipse filter fractured and embolized to Ms. McMan's lower left extremity at some point prior to October 25, 2012." (Pl's Br. at PageID 5078). Therefore, the "wrong which the claim is based" – the fracture of the Eclipse filter – occurred no later than October 25, 2012, and the three-year statute of limitations ran in October 2015, which is more than a year before McMan filed her Complaint in December of 2016. Therefore, her claims are barred by Michigan's three-year statute of limitations.

McMan characterizes the "harm necessary to trigger the accrual of her causes of action" as the fear and anxiety she began to suffer in December of 2014 when she became aware of the fractured filter and her physician warned her that removing the Eclipse filter would require surgery. (Pl's Br. at PageID 5078-5079). McMan further asserts that "the anxiety did not become an issue until April 2015, a little more than a year before she filed suit against Defendants." (Pl's Br. at PageID 5079). Thus, McMan argues that her claims are not time barred by Michigan's three-year statute of limitations. (Pl's Br. at PageID 5079).

However, McMan's interpretation of when the accrual on her claim began is unpersuasive in light of this District's ruling to the contrary. In *Peter v. Stryker Orthopaedics, Inc.*, 581 F.Supp.2d 813 (E.D. Mich. 2008), the plaintiff brought a similar product liability action under Michigan law. The *Peter* court noted that under *Trentadue*, "the relevant statutory period for products liability claims is three years and that period began to accrue when the wrong occurred or, more specific to this case, when the tibial base plate of Plaintiff's prosthetic knee fractured." *Peter*, 581 F.Supp.2d at 817. The "wrong" under M.C.L. § 600.5827 occurs when the product fails to function as intended (in this case, when the filter fractured), not the when the plaintiff suffers symptoms or discovers the injury.

7

Under Michigan law, McMan's claims began to accrue at the time the Eclipse filter fractured, which occurred no later than October 25, 2012. Therefore, the claims she filed on December 28, 2016 in this action are time barred by Michigan's three-year statute of limitations.

In the alternative, McMan also argues that "Bard's fraudulent concealment of the existence of Plaintiff's claims render her lawsuit timely." (Pl's Br. at PageID 5080). "Under Michigan law, the statute of limitations will not be tolled absent some proof that [Bard's] conduct constituted fraudulent concealment." *Davis v. Keys*, 859 F.Supp. 290, 293 (E.D. Mich. 1994)(citing *Lumber Village, Inc. v. Siegler*, 135 Mich. App. 685, 694 (1984)). "As a general rule, for fraudulent concealment to postpone the running of the period of limitation, the fraud must be manifested by an affirmative act or misrepresentation." *Id*. "Ordinarily, silence alone does not constitute fraudulent concealment." *Id.*

McMan has failed to produce any record evidence of an affirmative act or misrepresentation, which "prevented Mrs. McMan (and her physicians) from becoming aware of the Eclipse filter's failure until December 19, 2014." (Pl's Br. at PageID 5080). While it is true that McMan was not aware that she had a foreign body in her lower left extremity until December 19, 2014 and the foreign body was not identified as the filter leg until April 22, 2015, McMan has produced no record evidence that this was caused by fraudulent concealment on behalf of Bard. Instead, McMan merely claims that Bard concealed the risks of the filter by choosing to represent the risks of filter fractures as "known complication[s] of vena cava filters" generally instead of a more detailed warning about higher risks of complications presented by Eclipse as compared to other filters on the market. (Pl's Br. at PageID 5081-5082). Yet, McMan omits the following sentence in the Eclipse filter's Instructions for Use warning: "There have been some reports of serious pulmonary and cardiac complications with vena cava filters requiring the retrieval of the

8

fragment utilizing endovascular and/or surgical techniques." (ECF No. 28-31 at PageID 5480). This warning is far from an "affirmative act or misrepresentation" concealing the risks of fracture for the purposes of fraudulent concealment. *Davis*, 859 F.Supp. at 293.

In another alternative challenge, McMan argues that the Court should apply the reasoning of an unpublished Michigan Court of Appeals decision regarding asbestos plaintiffs: *Falk v. All Acquisition Corp.*, No. 296012, 2011 WL 566851 (Mich. Ct. App. Feb. 17, 2011). The Court does not find this case applicable to the matter at hand because it dealt specifically with individuals who may develop asbestos-related diseases, not plaintiffs such as McMan who are bringing product liability claims.

## CONCLUSION

For the reasons explained above, the Court GRANTS Defendants' motion for summary judgment because McMan's claims are time barred by Michigan's three-year statute of limitations. The Court also DISMISSES Defendants' pending *Daubert* motion to exclude as moot.

IT IS SO ORDERED.

Dated: July 21, 2021                                s/Sean F. Cox
                                                    Sean F. Cox
                                                    U. S. District Judge

9